# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| COREY D. CLARK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:13-cv-00058 |
| E! ENTERTAINMENT TELEVISION, LLC, | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 128). Plaintiff filed a response in opposition (Doc. No. 151), and Defendant has replied. (Doc. No. 158). For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**.

## I.  FACTUAL BACKGROUND

Plaintiff Corey Clark, a former contestant on *American Idol*, filed this diversity action for libel and false light invasion of privacy against Defendant E! Entertainment Television, LLC, and Fox Broadcasting Company based on E!'s January 27, 2012 airing of a program titled "E! True Hollywood Story: Paula Abdul" (the Program). [1] Specifically, Plaintiff alleges in his false light claim that the Program conveys the message that "Clark did not have any meaningful relationship with Abdul and that Clark was dishonest when he disclosed the nature of the relationship on ABC News." (Doc. No. 17 at ¶ 314). Both Defendant and Fox filed motions to dismiss, and on October 10, 2014, the Court granted Fox's motion in full and granted Defendant's motion to dismiss Clark's

---

[1] Morrison & Foerster, LLP was an original defendant, but Plaintiff dismissed that defendant on June 22, 2013. (Doc. No. 37). Additionally, Plaintiff's First Amended Complaint contained a claim for false advertising in violation of 5 U.S.C. § 1125(a)(1)(B) that was later dismissed by Plaintiff. (Doc. No. 59).

defamation claims. (Doc. No. 101). Thus, only a claim of false light invasion of privacy against E! Entertainment remains.

Plaintiff competed on Season Two of *American Idol*, which aired in 2003.[2] (Deposition I of Corey Clark ("Clark Dep. I") at 54:23-55:15). Paula Abdul appeared on the show as one of the three judges. (Doc. No. 153 at 4). During the 2003 season, Plaintiff was disqualified following the publication of an article on TheSmokingGun.com concerning his arrest in Topeka, Kansas on October 12, 2002. (Doc. No. 17 at 36). Sometime after Plaintiff's ouster from the contest, he publicly proclaimed that Ms. Abdul had been his mentor on the show, that the two had become romantically involved, and that he had an affair with Ms. Abdul while still a contestant on *American Idol*. (Doc. No. 100 at 7).

In 2005, while Plaintiff was working on an album release and a book regarding his experience on *American Idol*, (Doc. No. 153 at 5), the *Globe* and the *New York Post* reported on Clark's allegation that he had an affair with Ms. Abdul in 2003 while a participant on *American Idol*. (Clark Dep. I at 138:18 – 139:7). Many other publications and news outlets reported on Plaintiff's allegations, and ABC's *Primetime* devoted an episode to *American Idol* and Plaintiff's allegations of his affair. (Doc. No. 153 at 6). Plaintiff's allegations were also the subject of a sketch on NBC's *Saturday Night Live* in which Ms. Abdul appeared. SNL made fun of Plaintiff as being an opportunist, and Plaintiff testified that he thought the sketch was funny, was not offensive, and indicated that he had "arrived." (*Id.*). Clark agrees that in 2005, the notion of him being an opportunist who was looking for his fifteen minutes of fame was widely reported in the media. (Doc. No. 153 at 6).

---

[2] Defendant presents numerous undisputed material facts in its statement, many of which Plaintiff disputes in full or in part. The Court will limit its presentation of the facts to only those it deems necessary to decide the motion for summary judgment.

2

### *Ms. Abdul's E! True Hollywood Story*

The television series E! True Hollywood Story ("E! THS") is a documentary series that focuses on celebrities, movies, television programs, and public figures. (Doc. No. 153 at 2). In 2005, E! THS updated the Program that focused on Ms. Abdul's life and career to include the public controversy created by Plaintiff's allegations; that episode was broadcast again, with the last airing on or about January 27, 2012. (Doc. No. 100 at 8). As summarized previously by the Court in its October 10, 2014 order, the Program described Plaintiff's participation on *American Idol*, his ascension to becoming a finalist, and his disqualification after TheSmokingGun.com report. (*Id.* at 8-9). The program included an interview with an *American Idol* producer who explained that Plaintiff was disqualified from the show because he did not disclose on a background questionnaire that he had been arrested. (*Id.* at 9). The Program stated that Plaintiff was arrested, was later cleared of the charges, and that Plaintiff did not disclose the arrest on the questionnaire because he was cleared of the charges. (*Id.*).

The Program also recounted Plaintiff's later claims that he had an affair with Ms. Abdul. (*Id.*). A voiceover states that Ms. Abdul initially made no public statement, but later claimed Plaintiff's allegations were lies. (*Id.*). The Program went on to describe media and fan reactions to the story, and reports that an investigation by independent counsel hired by Fox found that Plaintiff's claims regarding the alleged affair were unsubstantiated. (*Id.*). The Program featured journalist John Quinones of ABC's *Primetime* speaking at length on camera about the allegations Clark made on *Primetime* and the fact that ABC stood by its report of Clark's allegations. (Doc. No. 153 at 9). The Program ends the segment discussing Plaintiff's allegations of an affair with a statement by USA Today's Elysa Gardner stating, "At the end of the day maybe only the two of them know what really happened." (*Id.* at 11).

3

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Claims that a fact is, or is not, in genuine dispute must be supported by the record. Fed. R. Civ. P. 56(c)(1). However, a "mere 'scintilla of evidence' within the record that militates against the overwhelming weight of contradictory corroboration does not create a genuine issue of fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). If a rational trier of fact could not find for the nonmoving party, summary judgment should be granted. *Slusher v. Shelbyville Hosp. Corp.*, 805 F.3d 211, 215 (6th Cir. 2015) (citing *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010)).

In *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 283 (Tenn. Ct. App. 2007), the Tennessee Court of Appeals explained that "summary judgments are particularly well-suited for false light and libel claims" because whether the plaintiff is a public figure, and whether he or she has come forward with clear and convincing evidence that the defendant was acting with actual malice are questions of law. Thus, where the actual malice standard applies, the "burden is upon plaintiff to show with 'convincing clarity' the facts which make up the 'actual malice.'" *Id.* (quoting *Trigg v. Lakeway Publishers, Inc.*, 720 S.W.2d 69, 75 (Tenn. Ct. App. 1986)).

## III.     ANALYSIS

The Tennessee Supreme Court recognized the tort of false light invasion of privacy in 2001, largely adopting the Restatement's definition of the tort, and permitting liability where a defendant

4

"gives publicity to a matter concerning another that places the other before the public in a false light" such that (1) "the false light into which the other is placed would be highly offensive to a reasonable person" and (2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643-44 (Tenn. 2001) (citing Restatement (Second) of Torts § 652E (1977)). "Actual malice" is the appropriate standard for false light claims when the plaintiff is a public official or public figure, or when the claim is asserted by a private individual about a matter of public concern. *Id.* at 647. This means that a plaintiff whose claim falls within one of these categories may not recover damages under a false light invasion of privacy claim unless the statement was made with knowledge of the falsity of the statement or reckless disregard for the truth of the statement. *Id.*

Three categories of public figures exist: (1) voluntary limited purpose public figures, which are persons who have voluntarily thrust themselves to the forefront of a particular public controversy so that they may influence the issues involved; (2) all-purpose public figures, which are persons who have such pervasive notoriety or fame that they are public figures for all purposes; and (3) involuntary public figures, which are persons who become public figures through no purposeful action of their own. *Gertz v. Robert Welch, Inc.*, 418 U.S. 345, 351 (1974). Plaintiff concedes that he is "at least" a limited purpose public figure (Doc. No. 151 at 11).

Because Plaintiff is a public figure, his false light claim against Defendant is construed under the actual malice standard set forth in *New York Times v. Sullivan*, 376 U.S. 254 (1964). The actual malice standard is a subjective one in which the ultimate question is whether the defendant made the statement with knowledge that it was false or with reckless disregard for the truth. *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 531 (6th Cir. 2014).

5

A statement is made with reckless disregard for the truth when a defendant makes the statement "with a high degree of awareness of probable falsity" or has "entertained serious doubts as to the truth of the publication." *Id.* (quoting *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)). A "failure to investigate, alone, will not support a finding of actual malice, but the 'purposeful avoidance of the truth' may do so." *Cobb v. Time, Inc*, 278 F.3d 629, 637 (6th Cir. 2002) (quoting *Harte-Hanks*, 491 U.S. at 692). Where a defendant is "reporting a third party's allegations, the standard of reckless disregard may be met where 'there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.'" *Id.* (quoting *Harte-Hanks*, 491 U.S. at 692).

In applying the actual malice standard, courts focus on whether the record discloses clear and convincing evidence upon which a trier of fact could find actual malice. Such is a question of law "premised on the recognition that judges . . . have a duty to independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars entry of any judgment that is not supported by clear and convincing proof of actual malice." *Thomas M. Cooley Law School*, 759 F.3d at 532 (quoting *Harte-Hanks*, 491 U.S. at 686). Clear and convincing proof requires that the Court find there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992).

In ruling on Defendant's previously filed motion to dismiss, this Court held that the Program was not capable of defamatory meaning and dismissed Plaintiff's defamation claims. (Doc. Nos. 100, 101). In order to defeat summary judgment regarding Plaintiff's false light claim, Plaintiff is required to present clear and convincing proof that regardless of the truthfulness of the Program, Defendant intentionally presented the episode in such a way as to leave viewers with an

6

impression of Plaintiff that Defendant knew or had reason to know was false. The undisputed facts and Plaintiff's proof in the record, however, establish that Plaintiff cannot meet his burden.

In support of its motion for summary judgment, Defendant states that Plaintiff has no evidence of Defendant acting with actual malice to support his false light claim. Defendant argues that Plaintiff's interrogatory responses failed to adequately identify any facts evidencing actual malice, and that he developed no factual record upon which a factfinder could determine Defendant had serious doubts as to the truth of the Program before airing it. Defendant contends that Plaintiff merely relies on the argument that he was not heard from directly in the Program to support his claim of actual malice; Defendant states that this argument fails because any interviews of Plaintiff in 2005 and 2010 regarding his allegations of an affair with Ms. Abdul were conducted by producers of E! News, a separate division of E! Entertainment from E! THS, and that E! Entertainment was not allowed to use footage from ABC's *Primetime* interview.[3] Defendant further argues that the fact Plaintiff's side of the controversy was presented through the voice of the Program's narrator, ABC's John Quinones, or USA Today's Elyssa Gardner instead of through Plaintiff's voice as he desired does not establish actual malice.

In response and in support of his burden to prove actual malice, Plaintiff argues primarily that Defendant failed to include any interviews of Plaintiff or his family members in the Program regarding his perspective on the controversy, and thus conveyed bias towards Ms. Abdul and against Plaintiff.[4] Plaintiff alleges that in addition to participating in interviews with E! News, he

---

[3] Plaintiff agrees that producers of E! THS were not allowed to use his earlier interviews with E! News. (Clark Dep. II 26:2-5; 123:13-23).

[4] Plaintiff spends a large portion of his response and "statement of additional facts" arguing about the allegations surrounding his criminal record in Kansas. The Court, however, will not focus on Plaintiff's arguments surrounding his criminal charges because they are not a part of his false light claim against Defendant. (Doc. No. 17 ¶¶ 311-316).

provided E! News with information and evidence regarding his alleged relationship with Ms. Abdul including telephone bills showing conversations he had with Ms. Abdul and an accurate and detailed description of the interior and exterior of Ms. Abdul's home that Defendant should have investigated further.

Viewing the undisputed facts in the light most favorable to Plaintiff, there is no basis upon which a jury could conclude by clear and convincing evidence that Defendant had actual knowledge of or acted in reckless disregard as to the truth or falsity of the facts about Plaintiff and his alleged relationship with Ms. Abdul contained in the Program. Put simply, Plaintiff's argument that Defendant acted with actual malice is premised on the notion that Defendant "selectively omitted" information that would have helped Plaintiff's side of the story.[5] Plaintiff, however, fails to provide any facts that show Defendant purposefully avoided the truth or had reasons to doubt the veracity of its sources of the information contained in the Program. Further, Plaintiff presents no proof that the alleged news interviews he did with E! News (which are not part of the record before the Court) were given to E! THS, or that they would have provided the Program with a more adequate representation of his side of the controversy beyond what was already provided by numerous individuals.

Although the Program does not interview Plaintiff or provide any voiceovers of him, his side of the controversy is adequately represented through narration, Mr. Quinones, and Ms.

---

[5] The Court is tasked with determining whether Plaintiff provided clear and convincing evidence that Defendant acted with actual malice. Beyond that, it is not the Court's task to provide editorial judgment on any omissions that Defendant may have made to the Program. *See e.g., Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1306 (8th Cir. 1986) ("Courts must be slow to intrude into the area of editorial judgment, not only with respect to choices of words, but also with respect to inclusions in or omissions from news stories. . . [U]nder the First Amendment the decision of what to select must almost always be left to writers and editors. It is not the business of government.").

Garner.[6]  For example, the Program's narrator includes information about Plaintiff's allegation that he had phone records documenting how frequently he spoke with Ms. Abdul as well as a bottle of prescription cough syrup bearing her name.  That Plaintiff believes Defendant should have conducted a more thorough investigation of his side of the story is not enough to overcome the high bar required to establish actual malice.  *See Lewis*, 238 S.W.3d at 302 ("Reduced to its essence, [plaintiff's] case boils down to his insistence that [defendants] could have conducted a better investigation before they aired the August 9, 2000 story.  This sort of claim, even if true, simply cannot withstand the rigors of the actual malice standard.").  Plaintiff has failed to present any evidence that Defendant acted with knowledge or with reckless disregard of the falsity of the information contained in the Program, and therefore, has failed to meet the high burden required to establish actual malice.  Because there is no genuine issue of fact as to the existence of actual malice, summary judgment is appropriate for Defendant.  *See Thomas M. Cooley Law School*, 759 F.3d at 534-35.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[6] The same can be said about Ms. Abdul's side of the controversy.  While the Program features Ms. Abdul commenting in part on Mr. Clark's allegations, it is the narrator and not Ms. Abdul, that actually relays her position on the controversy, stating: "[Paula] later claimed all of Clark's allegations were lies" and that she released a statement saying, "I have been taught never, never to lie.  Not only do I never lie, I never respond to lies, not matter how vicious, no matter how hurtful." (Doc. No. 130-5 at 85, 90).